UNITED STATES DISTRICT COURT

DISTRICT OF NEBRASKA

Winfield Solutions, LLC,

　　　　　　　　Plaintiff,

v.

M & L Ag, LLC, doing business by itself
and as Mehling Spraying Service, Robert
Craig Mehling, Ryan Mehling and
Stephanie Mehling,

　　　　　　　　Defendants.

Case No. _____

**COMPLAINT
(JURY TRIAL DEMANDED)**

For its Complaint against Defendants, Plaintiff states and alleges as follows:

**PARTIES, JURISDICTION
AND VENUE**

1.　　　　Plaintiff Winfield Solutions, LLC ("Winfield") is a Delaware limited
liability company.  Winfield's members are United Suppliers, Inc. and Winfield U.S.
Holdings, LLC.  United Suppliers, Inc. is an Iowa corporation with its principal place of
business located in Eldora, Iowa.  Under 28 U.S.C. § 1332(c)(1), United Suppliers, Inc. is
a citizen of the State of Iowa.  Winfield U.S. Holdings, LLC is a Delaware limited
liability company.  The sole member of Winfield U.S. Holdings, LLC is Land O'Lakes,
Inc.  Land O'Lakes, Inc. is a Minnesota corporation with its principal place of business
located in Arden Hills, Minnesota.  Under 28 U.S.C. § 1332(c)(1), Land O'Lakes, Inc. is
a citizen of the State of Minnesota.  Because its members are citizens of the States of
Iowa and Minnesota, Winfield is also a citizen of the States of Iowa and Minnesota.

2.      Defendant M & L Ag, LLC ("M & L Ag") is a Montana limited liability company.  M & L Ag's members are Roy Mehling and Defendants Robert Craig Mehling and Ryan Mehling.  Roy Mehling and Defendant Robert Craig Mehling are citizens of the State of Montana.  Defendant Ryan Mehling is a citizen of the State of Nebraska. Because its members are citizens of the States of Nebraska and Montana, M & L Ag is also a citizen of the States of Nebraska and Montana.

3.      Defendant Robert Craig Mehling is a citizen of the State of Montana currently residing in Hardin, Montana.

4.      Defendant Ryan Mehling is a citizen of the State of Nebraska currently residing in Holstein, Nebraska

5.      Defendant Stephanie Mehling is a citizen of the State of Nebraska currently residing in Holstein, Nebraska.

6.      The amount in controversy in this case, exclusive of costs and interest, exceeds the sum of $75,000.00.

7.      The Court has subject-matter jurisdiction over this case under 28 U.S.C. § 1332(a) based upon the complete diversity of citizenship between Winfield, on the one hand, and the Defendants, on the other hand, and the fact that the amount in controversy, exclusive of costs and interest, exceeds the sum of $75,000.00.

8.      The Court has personal jurisdiction over Defendants under Neb. Rev. Stat. § 25-536 and the due-process requirements of the United States Constitution.

9.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b).

## FACTS COMMON TO ALL COUNTS

**A.     Credit Relationship.**

10.     Winfield is engaged in the business of producing and distributing crop inputs and protection products.

11.     In 2016, Winfield partially merged with United Suppliers, Inc. ("United Suppliers"). As a result of the partial merger, United Suppliers' crop-protection product business merged into Winfield.

12.     M & L Ag is or was engaged in the business of selling crop-protection products to farmers in Nebraska. M & L conducts business under the name Mehling Spraying Service.

13.     M & L Ag is or was owned and managed by Roy Mehling and Defendants Robert Craig Mehling and Ryan Mehling.

14.     In or around November 2013, M & L Ag executed and delivered to United Suppliers a Credit Application under which it sought to purchase crop-protection products from United Suppliers on credit. Under the terms of the Credit Application, M & L Ag agreed to timely pay all invoices received from United Suppliers. M & L Ag further agreed to pay late charges on all past-due amounts at the rate of 1.5% per month or 18% per year. A true and correct copy of the Credit Application, redacted to omit confidential information, is attached to this Complaint as Exhibit A.

**B.     Security.**

15.     In November 2013, Defendants Ryan Mehling and Stephanie Mehling executed and delivered to United Suppliers a Guaranty under which they guaranteed full

payment all amounts due by M & L Ag to United Suppliers.  A true and correct copy of the November 2013 Guaranty, redacted to omit personal information, is attached to this Complaint as Exhibit B.

16.    In December 2013, Defendant Robert Craig Mehling executed and delivered to United Suppliers a Guaranty under which he guaranteed full payment all amounts due by M & L Ag to United Suppliers.  A true and correct copy of the December 2013 Guaranty, redacted to omit personal information, is attached to this Complaint as Exhibit C.

17.    In December 2013, M & L Ag executed and delivered to United Suppliers a Security Agreement under which it granted United Suppliers a security interest in inventory supplied by United Suppliers to M & L Ag and monies, accounts receivable and contract rights created from the sale of such inventory, and all products of and proceeds from any of the foregoing assets (collectively "the Collateral").  True and correct copies of the Security Agreement is attached to this Complaint as Exhibit D.

18.    United Suppliers properly perfected its security interest in the Collateral.

19.    As a result of the merger, Winfield is the successor-in-interest to United Suppliers under the Credit Application, Guaranties and Security Agreement and is entitled to enforce those contracts.

**C.    Default.**

20.    M & L Ag failed to pay for certain products that it purchased and received from United Suppliers from March through December 2014 ("the Products").

21.    The Products were delivered to M & L Ag's facility in Holstein, Nebraska.

22.     The net, unpaid balance due for the Products is $292,269.60.  A true and correct summary of the unpaid invoices for the Products is attached to this Complaint as Exhibit E.  True and correct copies of the unpaid invoices are collectively attached to this Complaint as Exhibit F.

23.     As of August 1, 2017, the unpaid balance due under the invoices for the Products had accrued late charges in the amount of $118,925.52.  Late charges have accrued since August 1, 2017, and will continue to accrue in the future, at the rate of $144.13 per day.  A true and correct summary of late charges reflecting these amounts is attached to this Complaint as Exhibit G.

24.     Winfield has incurred, and will continue in the future to incur, attorney fees, costs and disbursements to collect payment of the invoices for the Products. Winfield is entitled to recover its attorney fees, costs and disbursements under the terms of the Guaranties and Security Agreement.

25.     Winfield has satisfied all conditions to the commencement and prosecution of this action.

**COUNT I**
**ACTION FOR THE PRICE**
**(M & L AG)**

Winfield restates all of the foregoing paragraphs of this Complaint and further states and alleges as follows:

26.     The Products constitute "goods" under the Uniform Commercial Code.

27.     M & L Ag received and accepted the Products.

28.     Upon information and belief, M & L Ag sold the Products to its customers.

5

29.     Under Neb. Rev. Stat. UCC §§ 2-607(1) and 2-709(1)(a), Winfield is entitled to recover the unpaid balance due under the invoices for the Products from M & L Ag in the amount of $292,269.60.  Winfield is also entitled to recover late charges up to and including August 1, 2017, in the amount of $118,925.52, and additional late charges at the rate of $144.13 per day from August 1, 2017, through the date of entry of judgment.

**COUNT II**
**BREACH OF CONTRACT**
**(M & L AG)**

Winfield restates all of the foregoing paragraphs of this Complaint and further states and alleges as follows:

30.     M & L Ag contracted and agreed to pay the purchase price for the Products.

31.     M & L Ag breached its contractual obligations to Winfield by failing to pay the purchase price for the Products.

32.     As a result of M & L Ag's breaches, Winfield is entitled to recover the unpaid balance due under the invoices for the Products from M & L Ag in the amount of $292,269.60.  Winfield is also entitled to recover late charges up to and including August 1 2017, in the amount of $118,925.52, and additional late charges at the rate of $144.13 per day from August 1, 2017, through the date of entry of judgment.

**COUNT III**
**ENFORCEMENT OF GUARANTIES**
**(INDIVIDUAL DEFENDANTS)**

Winfield restates all of the foregoing paragraphs of this Complaint and further

6

states and alleges as follows:

33.     Under their Guaranties, Defendants Robert Craig Mehling, Ryan Mehling and Stephanie Mehling guaranteed payment of all amounts due under the invoices for the Products.

34.     M & L Ag is in default on its contractual and payment obligations to Winfield.

35.     Based upon M & L Ag's defaults, Winfield is entitled to recover the net, unpaid balance due under the invoices for the Products from Defendants Robert Craig Mehling, Ryan Mehling and Stephanie Mehling, jointly and severally, in the amount of $292,269.60.  Winfield is also entitled to recover late charges up to and including August 1, 2017, in the amount of $118,925.52, and additional late charges at the rate of $144.13 per day from August 1, 2017, through the date of entry of judgment.

36.     Under the terms of the Guaranties, Winfield is also entitled to recover its attorney fees, costs and disbursements.

**COUNT IV**
**REPLEVIN**
**(M & L AG)**

Winfield restates all of the foregoing paragraphs of this Complaint and further states and alleges as follows:

37.     Winfield has a valid and enforceable purchase-money security interest in the Collateral.

38.    M & L Ag is in default on its contractual and payment obligations to Winfield.

39.    Under the terms of the Security Agreement, and under the law, Winfield has the right to immediate possession of the Collateral.

40.    Winfield is entitled to an Order authorizing and directing the United States Marshal to seize and turn over to Winfield the Collateral pursuant to Neb. Rev. Stat. UCC §§ 9-601 and 9-609 and Neb. Rev. Stat. § 25-1093, et seq.

41.    Under the terms of the Security Agreement, Winfield is also entitled to recover its attorney fees, costs and disbursements.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Seventh Amendment to the United States Constitution, Winfield hereby demands a trial by jury.

**WHEREFORE**, Winfield respectfully prays for this Court's judgment as follows:

1.    Awarding Winfield money damages against Defendants, jointly and severally, for the unpaid balance due under the invoices for the Products in the amount of $292,269.60;

2.    Awarding Winfield late charges against Defendants, jointly and severally, up to and including August 1, 2017, in the amount of $118,925.52, and additional late charges at the rate of $144.13 per day from August 1, 2017, through the date of entry of judgment;

3.    Authorizing and directing the United States Marshal to seize and turn over to Winfield the Collateral;

8

4:17-cv-03100-RGK-SMB   Doc # 1   Filed: 08/01/17   Page 9 of 23 - Page ID # 9

4.      Awarding Winfield all of its attorney fees, costs and disbursements; and

5.      Granting Winfield all such other and further relief as the Court deems just

and equitable under the circumstances.

WINFIELD SOLUTIONS, LLC


Dated: August 1, 2017                    By: s/Jonathan C. Miesen
                                             Jonathan C. Miesen, MN Bar #19752X
                                             Associate General Counsel-Litigation

                                         Attorney for Plaintiff
                                         4001 Lexington Avenue North
                                         Arden Hills, MN 55126
                                         Telephone:   (651) 375-5985
                                         Facsimile:    (651) 234-0535
                                         E-mail: jcmiesen@landolakes.com



**UNITED SUPPLIERS, INC.**
P.O. Box 538
Eldora, Iowa  50627
800-782-5123 • 641-939-7011 (Fax)

# CREDIT APPLICATION

DEC 23 2013

Acct. No.: *131 2005*

**OFFICIAL NAME OF BUSINESS** *(Chief executive office address)*
·PLEASE PRINT OR TYPE·

Name: *M&L AG LLC*

Street: *19145 S. Winchester Ave*

P.O. Box: *11*

City: *Holstein*    State: *NE*    Zip: *59034*

County: *Adams*

Telephone: *402-756-5374*    Fax:

*Craig Mehling*
     *(Owner/President)*    ⬛ *(Home Address - City - State - Zip)*

*Ryan Mehling*
     *(General Manager) owner*    ⬛ *(Home Address - City - State - Zip)*

*Roy Mehling*
     *(Business Manager) owner*    ⬛ *(Home Address - City - State - Zip)*

U.S. Salesman: _____

SSN or Federal Identification No.: ⬛

Retail Sales Tax Permit No.: ⬛

EPA Establishment No.: _____

Pesticide Dealer No.: ⬛    Exp. Date *12/31/14*

Commercial Applicator License No.: ⬛

DUNS No.: _____

Type of Business: ☐ Cooperative   ☐ Corporation   ☑ LLC   ☐ Partnership   ☐ Sole Proprietorship   ☐ Other:
**If a Partnership or Sole Proprietorship, please provide a copy of the owner (s) current drivers license as mandated by Federal UCC law.**

State where incorporated or organized: *Montana*    Year Established: *4*

**PRINCIPAL TRADE SUPPLIERS**
*CPS*    *1720 16th Ave Kearney, NE 68847*
    *(Name)*    *(Address - City - State - Zip)*

    *(Name)*    *(Address - City - State - Zip)*

    *(Name)*    *(Address - City - State - Zip)*

**LENDER REFERENCE**   Account Number ⬛
*Farmers & Merchants Bank*    *3015 Second Ave Kearney, NE 68847*
    *(Lender Name)*    *(Address - City - State - Zip)*

Loan Officer Contact: *Joel Wheeler*    Phone: *1-308-698-5250*
*236 - 5411*

**FINANCIAL STATEMENT** (Check One)  ☐ Attached   ☑ To be Mailed (When): *12-31-13*   Fiscal Year End: *12-31-13*

Credit Limit Requested: Crop Protection $: *2,000,000 00*    Crop Nutrients $: *100,000*

**Will Applicant Sign Purchase Money Security Agreement to Support Credit Extended?**   ☑ Yes   ☐ No

**If Incorporated, will Stockholders Sign Personal Guaranties to Support Credit Extended?**   ☑ Yes   ☑ No

**If L.L.C., will Members Sign Personal Guaranties to Support Credit Extended?**   ☑ Yes   ☐ No

For the purpose of establishing credit, I am authorizing my bank and any other creditors to release credit and financial information to United Suppliers, Inc. and do hereby expressly waive any rights to privacy or confidentiality concerning such information as may be afforded by the Gramm-Leach-Bliley Act of 1999 or any similar federal or state statute.  I agree to pay United Suppliers, Inc. invoices according to terms; but should my account become past due, I understand and agree to pay a late penalty charge of 1.5% per month or the highest legal rate, whichever is less. I agree that a facsimile or copy of the signature below is as valid as the original.

_____
Signed (Owner or Authorized Officer)

*Owner/Partner*
Title

*11/25/13*
Date

**EXHIBIT**

**A**



EXHIBIT

B

DEC 23 2013

**UNITED SUPPLIERS, INC.**
P. O. Box 538
30473 260th Street
Eldora, Iowa 50627



# GUARANTY

The undersigned (hereinafter called Guarantors, whether one or more) for valuable consideration, receipt whereof is hereby acknowledged, and in

further consideration of Creditors (as hereinafter defined) extending to _____ M & L AG L.L.C. _____

credit (whether in connection with the sale of product, advance of money or otherwise) from time to time (the extent of such credit being at all times in the discretion of Creditors and subject to change by Creditors without notice) hereby guarantees to Creditors the payment of all indebtedness of Debtors to Creditors whether now existing or hereafter arising, and the full, prompt, faithful and complete performance by Debtors of all agreements.

Whenever the word "Creditors" is used herein, it shall be construed to mean, severally, UNITED SUPPLIERS, INC., its successors and assigns, and also, severally, all companies and corporations which may now be or may hereafter become a subsidiary or affiliated in business with such UNITED SUPPLIERS, INC., and severally, the successors and assigns of each. This guaranty, shall be fully effective in the case of credit extended by the Creditors under trade names or styles as when made in their respective corporate names. It is understood and agreed, with respect to the Creditors defined in this paragraph, that this guaranty shall be construed as a separate and distinct guaranty to the same extent as though a separate contract of guaranty were executed for the benefit of and in the name of each.

The word "Indebtedness" is used herein in its most comprehensive sense and includes any and all advances, debt, obligations, and liabilities of the Debtors, now existing or hereafter made, incurred or created.

Guarantors agree that this guaranty shall be directly enforceable against Guarantors without first resorting to the principal Debtors or exhausting remedies against them, and any note or notes given to or accepted by the Creditors covering any of the above indebtedness, or any indulgences, forbearances, or extensions of time of payment, shall not in any way release Guarantors from liability. Guarantors agree that in the event a settlement is made with the Debtors for less than the amount of the indebtedness actually due the Creditors, Guarantors shall in no way be released from liability, for the balance still due to the Creditors even though the Debtors shall have been released from said indebtedness. Any married woman who signs this guaranty expressly agrees that recourse may be had against her separate property for all her obligations under this guaranty. Guarantors further agree to waive the benefit of any statute of limitations affecting the Debtor's liability hereunder or the enforcement thereof.

This is an absolute and continuing guaranty and shall remain in full force and effect from date until revoked by Guarantors in writing, notice of such revocation to be sent by Certified Mail to UNITED SUPPLIERS, INC., P.O. Box 538, Eldora, Iowa 50627, and be established by postal receipt or acknowledged in writing and signed by an officer of UNITED SUPPLIERS, INC. If this guaranty is signed by two or more persons, notice of revocation by less than all shall not revoke this guaranty as to the other Guarantors. The fact that no indebtedness is incurred by the Debtors during any particular period or periods of time hereafter shall not be construed as an abandonment or waiver of this guaranty nor as releasing the Guarantors from liability hereunder by the Creditors. Revocation shall not affect liability for indebtedness created prior thereto.

This guaranty is independent of and in addition to any and all other security which the Creditors may now or hereafter have for the payment of the indebtedness herein mentioned. Guarantors hereby waive notice of acceptance of the guaranty, notice of the creation, existence, or maturity of any and all indebtedness incurred hereunder, or other liabilities, and notice of default in or extension of time for payment of any of the foregoing. Guarantors further waive presentment of payment and protest.

If it becomes necessary to enforce this guaranty by suit or to place this guaranty in the hands of an attorney for enforcement, although no suit results, Guarantors agree to pay the Creditors interest at the rate of eighteen per cent per annum after maturity (or the maximum lesser amount that is lawful under the applicable laws) until paid, on the amount for which Guarantors are liable, and all costs, attorney's fees and reasonable expenses of collection.

Whenever the word "Debtors" is used in this instrument, it shall be construed to mean the Debtors actually named herein; and in the event the said Debtors is a corporation, its successors and assigns; and in the event the said Debtors is a partnership, any or either of the partners and the survivor or survivors of any or either of them, and such other person or persons as shall or may at any time or times hereafter be in partnership with them or any or either of them. No change in a partnership or proprietorship shall release the undersigned unless notice of revocation is given as aforesaid.

It is agreed that the words and pronouns used in the plural number shall be construed to include the singular number and words and pronouns used in the singular number shall be construed to include the plural number. If this guaranty is signed by more than one person, the signers shall be jointly and severally liable hereunder.

We, the undersigned Guarantors, have carefully read the above and understand its provisions and the obligations created hereunder, and agree that it shall be binding on us and our heirs, executors, administrators, successors and assigns.

**The undersigned personal guarantor(s), recognizing that his or her individual credit history may be a necessary factor in the evaluation of the personal guaranty, hereby consents to and authorizes the use of a consumer credit report on the undersigned, by the above named business credit grantor, from time to time as may be needed, in the credit evaluation process.**

IN WITNESS WHEREOF the undersigned Guarantors have executed this guaranty this 25 day of November, 2013.

Executed in the presence of:

| | |
|---|---|
| _Stephanie Mehring_ | _Ryan_ |
| Witness | RYAN MEHLING                        Guarantor |
| Address ▓▓▓▓▓▓▓▓▓▓ | Address ▓▓▓▓▓▓▓▓▓▓ |
| _Ryan Mehling_ | _Stephanie Mehring_ |
| Witness | STEPHANIE MEHLING                   Guarantor |
| Address ▓▓▓▓▓▓▓▓▓▓ | Address ▓▓▓▓▓▓▓▓▓▓ |



DEC 2 3 2013

**UNITED SUPPLIERS, INC.**
P. O. Box 538
30473 260th Street
Eldora, Iowa 50627

# GUARANTY

The undersigned (hereinafter called Guarantors, whether one or more) for valuable consideration, receipt whereof is hereby acknowledged, and in further consideration of Creditors (as hereinafter defined) extending to _____ M & L AG L.L.C. _____

credit (whether in connection with the sale of product, advance of money or otherwise) from time to time (the extent of such credit being at all times in the discretion of Creditors and subject to change by Creditors without notice) hereby guarantees to Creditors the payment of all indebtedness of Debtors to Creditors whether now existing or hereafter arising, and the full, prompt, faithful and complete performance by Debtors of all agreements.

Whenever the word "Creditors" is used herein, it shall be construed to mean, severally, UNITED SUPPLIERS, INC., its successors and assigns, and also, severally, all companies and corporations which may now be or may hereafter become a subsidiary or affiliated in business with such UNITED SUPPLIERS, INC., and severally, the successors and assigns of each. This guaranty, shall be fully effective in the case of credit extended by the Creditors under trade names or styles as when made in their respective corporate names. It is understood and agreed, with respect to the Creditors defined in this paragraph, that this guaranty shall be construed as a separate and distinct guaranty to the same extent as though a separate contract of guaranty were executed for the benefit of and in the name of each.

The word "indebtedness" is used herein in its most comprehensive sense and includes any and all advances, debt, obligations, and liabilities of the Debtors, now existing or hereafter made, incurred or created.

Guarantors agree that this guaranty shall be directly enforceable against Guarantors without first resorting to the principal Debtors or exhausting remedies against them, and any note or notes given to or accepted by the Creditors covering any of the above indebtedness, or any indulgences, forbearances, or extensions of time of payment, shall not in any way release Guarantors from liability. Guarantors agree that in the event a settlement is made with the Debtors for less than the amount of the indebtedness actually due the Creditors, Guarantors shall in no way be released from liability, for the balance still due to the Creditors even though the Debtors shall have been released from said indebtedness. Any married woman who signs this guaranty expressly agrees that recourse may be had against her separate property for all her obligations under this guaranty. Guarantors further agree to waive the benefit of any statute of limitations affecting the Debtor's liability hereunder or the enforcement thereof.

This is an absolute and continuing guaranty and shall remain in full force and effect from date until revoked by Guarantors in writing, notice of such revocation to be sent by Certified Mail to UNITED SUPPLIERS, INC., P.O. Box 538, Eldora, Iowa 50627, or be established by postal receipt or acknowledged in writing and signed by an officer of UNITED SUPPLIERS, INC. If this guaranty is signed by two or more persons, notice of revocation by less than all shall not revoke this guaranty as to the other Guarantors. The fact that no indebtedness is incurred by the Debtors during any particular period or periods of time hereafter shall not be construed as an abandonment or waiver of this guaranty nor as releasing the Guarantors from liability hereunder by the Creditors. Revocation shall not affect liability for indebtedness created prior thereto.

This guaranty is independent of and in addition to any and all other security which the Creditors may now or hereafter have for the payment of the indebtedness herein mentioned. Guarantors hereby waive notice of acceptance of the guaranty, notice of the creation, existence, or maturity of any and all indebtedness incurred hereunder, or other liabilities, and notice of default in or extension of time for payment of any of the foregoing. Guarantors further waive presentment of payment and protest.

If it becomes necessary to enforce this guaranty by suit or to place this guaranty in the hands of an attorney for enforcement, although no suit results, Guarantors agree to pay the Creditors interest at the rate of eighteen per cent per annum after maturity (or the maximum lesser amount that is lawful under the applicable laws) until paid, on the amount for which Guarantors are liable, and all costs, attorney's fees and reasonable expenses of collection.

Whenever the word "Debtors" is used in this instrument, it shall be construed to mean the Debtors actually named herein; and in the event the said Debtors is a corporation, its successors and assigns; and in the event the said Debtors is a partnership, any or either of the partners and the survivor or survivors of any or either of them, and such other person or persons as shall or may at any time or times hereafter be in partnership with them or any or either of them. No change in a partnership or proprietorship shall release the undersigned unless notice of revocation is given as aforesaid.

It is agreed that the words and pronouns used in the plural number shall be construed to include the singular number and words and pronouns used in the singular number shall be construed to include the plural number. If this guaranty is signed by more than one person, the signers shall be jointly and severally liable hereunder.

We, the undersigned Guarantors, have carefully read the above and understand its provisions and the obligations created hereunder, and agree that it shall be binding on us and our heirs, executors, administrators, successors and assigns.

**The undersigned personal guarantor(s), recognizing that his or her individual credit history may be a necessary factor in the evaluation of the personal guaranty, hereby consents to and authorizes the use of a consumer credit report on the undersigned, by the above named business credit grantor, from time to time as may be needed, in the credit evaluation process.**

IN WITNESS WHEREOF the undersigned Guarantors have executed this guaranty this _12_ day of _December_ , _2013_ .

Executed in the presence of:

_Ryan McColly_
Address _____ Witness

_Holstein, NE 68950_
Address _____ Witness

_Craig Mehling_
CRAIG MEHLING
Address _____ Guarantor

_N/A_
Address _____ Guarantor

**EXHIBIT**

**D**

## SECURITY AGREEMENT - GENERAL FORM

1. **GRANT OF SECURITY INTEREST.** For value received, as security for the Obligations (as defined below) the undersigned Debtor hereby grants to _____

UNITED SUPPLIERS, INC.

_____ ("Secured Party") a security

interest in the property described in the paragraphs checked below:

☐ All of Debtor's inventory now owned or hereafter acquired;

☐ All of Debtor's accounts, now existing or hereafter arising, together with all interest of Debtor in any goods, the sale or lease of which give rise to any of Debtor's accounts, and all chattel paper, documents and instruments relating to accounts, Debtor will promptly deliver to Secured Party, duly endorsed when necessary, all such chattel paper, documents and instruments;

☐ All of Debtor's general intangibles, now owned or hereafter acquired, including but not limited to amounts due to the Debtor by Secured Party under the terms of a base capital plan and their proceeds.

☐ All of Debtor's equipment now owned or hereafter acquired;

☐ All of Debtor's farm products now owned or hereafter acquired;

☐ All of Debtor's fixtures now owned, rented, leased, or hereafter acquired, wherever located;

☒ Property described as all inventory owned by the Debtor, including but not limited to all fertilizer, feed, agricultural chemicals, seed, and other goods now existing or hereafter acquired by the Debtor from or through Secured Party, and all monies, accounts, other forms of obligations, other rights to the payment of money now due or to become due under contracts now existing or hereafter to be created from the sale of goods acquired from or through Secured Party, together with the proceeds, products, income issue, accessions, attachments, accessories, parts, additions, repairs, replacements and substitutes of, to, and for all of the foregoing and further including all of Debtor's accounts and general intangibles, now owned or hereafter acquired, including but not limited to amounts due to the Debtor by Secured Party under the terms of a base capital plan and all proceeds therefrom.

2. **OBLIGATIONS.** The aforesaid security interests secure payment of the following liabilities (the "Obligations"):

All obligations of Debtor to Secured Party

_____

_____

together with all other obligations of Debtor to Secured Party now existing or hereafter arising, whether direct of indirect, contingent or absolute and whether as maker or surety and including, but not limited to, future advances and amounts advanced and expenses and attorneys' fees incurred pursuant to this Security Agreement.

3. **REAL ESTATE.** Any collateral attached to, or grown upon, land (such as fixtures, crops, timber or minerals) will be grown upon or attached to the

following described real estate:

_____

_____

and the name of the record owner of such real estate (if other than Debtor) is: _____

4. **COPY-FILING.** A carbon, photocopy or other reproduction of this Security Agreement may be filed as a financing statement. IF FOR FIXTURES, TIMBER OR MINERALS, SUCH A FILING SHALL BE FILED FOR RECORDING IN THE REAL ESTATE RECORDS.

5. **DEBTORS.** Each of the undersigned, if more than one, execute this Security Agreement as his, her, its, their joint and several obligation and it shall be binding upon and fully enforceable against either or both, or any or all of them, and references herein to "Debtor" shall in such case be deemed to be plural, provided however that nothing contained herein shall extend personal liability under any of the Obligations as to which such Debtor is not otherwise liable.

6. **COLLATERAL.** Debtor represents, warrants and agrees:

a. All Collateral is bona fide and genuine and Debtor is authorized to grant a Security Interest in the Collateral, free and clear of all liens and encumbrances,

except the security interest created hereby and except _____

_____

_____

b. Debtor's principal place of operation is the address shown herein, and Debtor shall promptly give Secured Party written notice of any change thereof, unless prior written consent of Secured Party is obtained. All Collateral and all of the Debtor's business records are now kept, and shall continue to be kept, at such address, or if not, at

_____

_____

THIS AGREEMENT SPECIFICALLY INCLUDES ALL OF THE ADDITIONAL PROVISIONS SET FORTH ON THE REVERSE SIDE HEREOF. DEBTOR ACKNOWLEDGES RECEIPT OF A FULLY COMPLETED COPY OF THIS SECURITY AGREEMENT.

M & L AG L.L.C.

X _(signature)_                                                    Date 12-12-2013

CRAIG MEHLING, MEMBER          (Debtor)

ADDRESS OF SECURED PARTY (FROM WHICH INFORMATION CONCERNING THE SECURITY INTEREST MAY BE OBTAINED)

_____ (Debtor)

UNITED SUPPLIERS, INC.

19145 SOUTH WINCHESTER AVE          30473 260TH STREET, P O BOX 538
Number and Street

HOLSTEIN                                    Eldora
City                                              Number and Street

Adams                          NE          Hardin                    IA  50627
County                        State          City

                                              County                    State

1. **REPRESENTATIONS AND AGREEMENTS.** Debtor represents and agrees that:

a. If a corporation or other business entity, Debtor is duly organized, existing, and is qualified and in good standing in all states in which it is doing business, and the execution, delivery and performance of this Security Agreement are within Debtor's powers, have been duly authorized, and are not in contravention of law or the terms of Debtor's charter, bylaws, if any, or any indenture, agreement, or undertaking to which Debtor is a party, or by which it is bound. If an individual, Debtor is of legal age. Debtor will not change his, her, or its name, or identity unless written notice is given in advance to Secured Party.

b. Debtor shall maintain insurance upon the Collateral which is tangible property against all customarily insured risks for the full insurable value thereof (and furnish Secured Party with duplicate policies if Secured Party so requests), loss to be payable to Debtor and Secured Party as their respective interests may appear. In the event of any loss or damage to any Collateral, Debtor will give Secured Party written notice thereof forthwith, promptly file proof of loss with the appropriate insurer and take all other steps necessary or appropriate to collect such insurance. If Secured Party so elects, Secured Party shall have full authority to collect all such insurance and to apply any amount collected to amounts owed hereunder, whether or not matured. Secured Party shall have no liability for any loss which may occur by reason of the omission or the lack of coverage of any such insurance.

c. Debtor shall at all times maintain Collateral which is tangible property in good condition and repair, defend at Debtor's expense all Collateral from all adverse claims and shall not use any of the Collateral for any illegal purpose.

d. Debtor shall (i) keep such books and records pertaining to the Collateral and to Debtor's business operations as shall be satisfactory to Secured Party; (ii) permit representatives of Secured Party at any time to inspect the Collateral and inspect and make abstracts from Debtor's books and records; and (iii) furnish to Secured Party such information and reports regarding the Collateral and Debtor's business operations and its financial status, as Secured Party may from time to time reasonably require. SECURED PARTY IS HEREBY AUTHORIZED TO REQUEST CONFIRMATION OF SUCH INFORMATION OR ADDITIONAL INFORMATION OF ANY KIND WHATSOEVER DIRECTLY FROM ANY THIRD PARTY HAVING DEALINGS WITH DEBTOR. SECURED PARTY IS FURTHER IRREVOCABLY AUTHORIZED TO ENTER DEBTOR'S PREMISES TO INSPECT THE COLLATERAL.

e. Debtor shall give such notice in writing (including but not limited to notice of assignment or notice to pay Secured Party directly) as Secured Party may require at any time to any or all account debtors, with respect to accounts which are Collateral, and, if Secured Party shall so request, deliver to Secured Party copies of any and all such notices.

f. Debtor shall promptly transmit to Secured Party all information that it may have or receive with respect to Collateral or with respect to any account debtor which might in any way affect the value of the Collateral or Secured Party's rights or remedies with respect thereto.

g. Unless in default under this Agreement, Debtor may sell inventory in the ordinary course of business and consume any raw materials or supplies, the use and consumption of which are necessary to carry on Debtor's business. Debtor shall not otherwise consume, assign or transfer any Collateral without prior written consent of Secured Party. The provisions of this Agreement granting a security interest in proceeds shall not be construed to mean that Secured Party consents to any sale or disposition of any Collateral.

h. Debtor shall pay when due all taxes, assessments, and any other governmental levy which is, or may be, levied against any Collateral, and shall otherwise maintain the Collateral free of all liens, charges, and encumbrances (except liens set forth herein and the Security Interest created hereby).

i. Debtor shall not store any Collateral with any warehouseman without Secured Party's consent.

j. Debtor shall promptly, unless Secured Party shall waive such requirement in writing, deliver to Secured Party all certificates of title, if any, (or any other documents evidencing title) to all Collateral with such proper notations, assignments or endorsements as may be necessary or appropriate to create, preserve or perfect Secured Party's security interest in the Collateral.

k. Debtor shall, at its cost and expense, execute, deliver, file or record (in such manner and form as Secured Party may require) any assignment, financing statement or other paper that may be necessary or desirable, or that Secured Party may request, in order to create, preserve or perfect any security interest granted hereby or to enable Secured Party to exercise and enforce its rights hereunder or under any Collateral. Secured Party is further granted the power, coupled with an interest, to sign on behalf of Debtor as attorney-in-fact and to file one or more financing statements under the Uniform Commercial Code naming Debtor as debtor and Secured Party as secured party and describing the Collateral herein specified. Such authorization includes the filing of a financing statement utilizing any category of collateral set forth in the applicable Uniform Commercial Code including an "all assets" filing.

2. EXPENSES. Debtor upon demand shall pay to Secured Party forthwith the amounts of all expenses, including reasonable attorneys' fees and legal expenses, incurred by Secured Party in seeking to collect any sums secured hereunder or to enforce any rights in the Collateral. Such amounts shall be secured hereby, and if not paid on demand shall bear interest at the highest rate payable on any of the Obligations.

3. COLLECTION AUTHORITY ON ACCOUNTS. Debtor hereby irrevocably appoints Secured Party its true and lawful attorney, with full power of substitution, in Secured Party's name, Debtor's name or otherwise, for Secured Party's sole use and benefit, but at Debtor's cost and expense, to exercise, if Secured Party shall elect after an event of default has occurred (whether or not Secured Party then elects to exercise any other of its rights arising upon default) all or any of the following powers with respect to all or any Accounts which are Collateral:

a. To execute on Debtor's behalf assignments of any or all Accounts which are Collateral to Secured Party, and to notify account debtors thereunder to make payments directly to Secured Party;

b. To demand, sue for; collect, receive and give acquittance for any and all moneys due or to become due upon or by virtue thereof;

c. To receive, take, endorse, assign and deliver any and all checks, notes, drafts, documents and other negotiable and non-negotiable instruments and chattel paper taken or received by Secured Party in connection therewith;

d. To settle, compromise, compound, prosecute or defend any action or proceeding with respect thereto;

e. To sell, transfer, assign or otherwise deal in or with the same or the proceeds thereof or the relative goods, as fully and effectually as if Secured Party were the absolute owner thereof; and

f. To extend the time of payment of any or all thereof and to make any allowance and other adjustments with reference thereto.

Any funds collected pursuant to such powers shall be applied to the payment of the Obligations. The exercise by Secured Party of, or failure to so exercise, any of the foregoing authority, shall in no manner affect Debtor's liability to Secured Party on any of the Obligations. Secured Party shall be under no obligation or duty to exercise any of the powers hereby conferred upon it and it shall be without liability for any act or failure to act in connection with the collection of or the preservation of any rights under any such accounts. Secured Party shall not be bound to take any steps necessary to preserve rights in any instrument or chattel paper against prior parties.

4. SET OFF. In the event of default hereunder, Secured Party, at its option at any time, and without notice to Debtor, may apply against the Obligations any property of Debtor held by Secured Party. As additional security for payment of the Obligations, Debtor hereby grants to Secured Party a security interest in any funds or property of Debtor now or hereafter in possession of Secured Party with respect thereto Secured Party will have all rights and remedies herein specified.

5. WAIVER. Debtor waives protest, notice of dishonor, and presentment of all commercial paper at any time held by Secured Party on which Debtor is in any way liable, notice of non-payment at maturity of any account or chattel paper, and notice of any action taken by Secured Party except where notice is expressly required by this Agreement or cannot by law be waived.

6. DEFAULT. Debtor will be in default upon the occurrence of any of the following events: (a) failure to make the payment, when due and payable, of any of the Obligations; (b) failure of the performance of any obligation or covenant contained or referred to herein; (c) any warranty, representation or statement made or furnished to Secured Party by or on behalf of Debtor proves to have been false in any material respect when made or furnished; (d) any event which results in the acceleration of the maturity of the indebtedness of Debtor or any guarantor or co-maker of any of the Obligations to others under any indenture, agreement or undertaking; (e) loss, theft, damage, destruction or encumbrance to, or of, the Collateral or the making of any levy, seizure or attachment thereof or thereon; (f) death of, dissolution of, termination of existence of, insolvency of, business failure of, appointment of a receiver of any part of the property of, assignment for the benefit of creditors by, or the commencement of any proceeding under any bankruptcy or insolvency law by or against, Debtor or any guarantor or co-maker of any of the Obligations; (g) the occurrence or nonoccurrence of any event or events which causes the Secured Party, in good faith, to deem itself insecure for any reason whatsoever.

In any such event Secured Party may at its option declare any or all of the Obligations to be due and payable and such sums shall then be due and payable immediately, without notice or demand.

7. RIGHTS AND REMEDIES ON DEFAULT. After the occurrence of any event of default, Secured Party may exercise at any time and from time to time any rights and remedies available to it under applicable law, including but not limited to the right to sell, lease or otherwise dispose of the Collateral, and the right to take possession of the Collateral. FOR THAT PURPOSE SECURED PARTY MAY ENTER UPON ANY PREMISES ON WHICH THE COLLATERAL OR ANY PART THEREOF MAY BE SITUATED AND REMOVE IT. Secured Party may require Debtor to assemble the Collateral and make it available at a place to be designated by Secured Party which is reasonably convenient to both parties. If at the time of repossession any of the Collateral contains other personal property not included in the Collateral, Secured Party may hold such personal property into custody and store it at the risk and expense of Debtor. Secured Party agrees to notify Secured Party within forty-eight (48) hours after repossession of the Collateral of any such other personal property claimed, and failure to do so will release Secured Party and its representatives from any liability for loss or damage thereto. Any notice of intended disposition of any of the Collateral required by law shall be deemed reasonable if such notice is given at least ten (10) days before the time of such disposition. Any proceeds of any disposition by Secured Party of any of the Collateral may be applied by it to the payment of expenses in connection with the Collateral, including but not limited to repossession expenses and reasonable attorneys' fees and legal expenses, and any balance of such proceeds shall be then applied against the Obligations and other amounts executed hereby in such order of application as Secured Party may elect.

8. GENERAL.

a. Secured Party may, at its option, pay any tax, assessment, or other Governmental levy, or insurance premium or any other expense or charge relating to Collateral which is payable by Debtor (and not timely paid by it), and further may pay any filing or recording fees. Any amount or amounts so paid, with interest thereon at the highest rate payable on any of the Obligations (from the date of payment until repaid) shall be secured hereby and shall be payable upon demand.

b. Secured Party shall not be deemed to have waived any of its rights hereunder or under any other agreement, instrument or paper signed by Debtor unless such waiver be in writing and signed by Secured Party. No delay or omission on the part of Secured Party in exercising any right shall operate as a waiver of such right or any other right. A waiver on any one occasion shall not be construed as a bar to, or waiver of, any right or remedy on any future occasion.

c. Any notice, if mailed, shall be deemed given when mailed postage prepaid, addressed to Debtor at its address shown above, or at any other address of Debtor appearing on Secured Party's records.

d. Covenants, representations, warranties and agreements herein set forth shall be binding upon Debtor, its legal representatives, successors and assigns. This Agreement may be assigned by Secured Party and all rights and privileges of Secured Party under this Agreement shall then inure to the benefit of its successors and assigns.

e. If any provision of this Agreement shall be for any reason held to be invalid or unenforceable, such invalidity or unenforceability shall not affect any other provision hereof, but this Agreement shall be construed as if such invalid or unenforceable provision had never been contained herein.

f. If Debtor is a guarantor, endorser, co-maker, or an accommodation party with respect to the Obligations, Debtor hereby waives the benefit of any and all defenses and claims of damage which are dependent upon Debtor's character as a party other than the maker. Each party to any of the Obligations hereby consents to and waives notice of (1) any and all extensions (whether or not for longer than the original period) granted as to the time of payment of any or all of the Obligations, and (2) any renewal of any or all of the Obligations.

g. This Agreement and all rights and duties hereunder, including but not limited to all matters of construction, validity, and performance, shall be governed by the law of Iowa.

h. Unless otherwise defined or the context otherwise requires, all terms used herein which are defined in the Iowa Uniform Commercial Code shall have the meanings therein stated. The rights and remedies herein conferred upon Secured Party shall be in addition to, and not in substitution or in derogation of, rights and remedies conferred by the Iowa Uniform Commercial Code and other applicable law.

i. All words and phrases used herein shall be construed as in the singular or plural number, and as masculine, feminine or neuter gender, as the context may require.

j. Captions are inserted for convenience only and shall not be taken as altering the text.

**INVOICE SUMMARY**

| A | B | C | D | E |
|---|---|---|---|---|
| Invoice No. | Invoice Date | Due Date | Amount | Balance |
| C40164952 | 03/14/14 | 09/15/14 | $126,735.84 | $50,435.06 |
| C40269678 | 08/31/14 | 06/15/15 | $21,152.00 | $898.26 |
| C40269687 | 08/31/14 | 06/15/15 | $37,570.10 | $29,577.48 |
| C40269688 | 08/31/14 | 06/15/15 | $99,127.10 | $99,127.10 |
| C40269690 | 08/31/14 | 06/15/15 | $87,296.00 | $55,948.80 |
| C40278892 | 10/08/14 | 06/15/15 | $190,146.68 | $27,552.90 |
| C40284839 | 12/04/14 | 06/15/15 | $28,730.00 | $28,730.00 |
| | | | | **$292,269.60** |

EXHIBIT

E



# UNITED SUPPLIERS, INC

30473 260th St
P. O. Box 538
Eldora, Iowa 50627
(641) 858-2341

Bill To:      1312005

M & L AG, LLC.
% CRAIG MEHLING
ROUTE 1 BOX 1067
HARDIN, MT 59034

Invoice Number:  C40164952
Invoice Date:  3/14/2014
Ticket No:  KN-66168

Ship To:

M & L AG, LLC.
19145 SOUTH WINCHESTER AVE
PO BOX 11
HOLSTEIN, NE 68950

Please Remit To:

UNITED SUPPLIERS, INC.
P.O. BOX 802716
KANSAS CITY, MO 64180-2716.

Due Date:       9/15/2014

DOLLARS ARE IN (USD) ON THIS INVOICE.

| TERMS | SALESMAN | SHIP VIA | SHIP DATE | RELEASES | BOL | CUSTOMER # |
|---|---|---|---|---|---|---|
| SEE BELOW | SHIRLEY | | 3/14/2014 | | | 1312005 |

| ITEM | LOC | DESCRIPTION | UNITS | SIZE | QUANTITY | PRICE(USD) | AMOUNT(USD) |
|---|---|---|---|---|---|---|---|
| 41Q48125 | 17 | QUILT XCEL (264) (1-WAY) | 2.00 | TANK | 528.00 | $240.0300 | $126735.84 |
| | | PRICED PER GAL | | | | | |

|  |  |
|---|---|
| Subtotal(USD) | $126,735.84 |
| Tax(USD) | $0.00 |
| Total(USD) | $126,735.84 |

TERMS: A 1.5% PER MONTH LATE PAYMENT PENALTY WILL BE ASSESSED AFTER DUE DATE

Balance due - $50,435.06

EXHIBIT

F

Page  1



# UNITED SUPPLIERS, INC

30473 260th St
P. O. Box 538
Eldora, Iowa 50627
(641) 858-2341

Bill To:            1312005

M & L AG, LLC.
% CRAIG MEHLING
ROUTE 1 BOX 1067
HARDIN, MT 59034

Invoice Number:  C40269678
Invoice Date:  8/31/2014
Ticket No:  DS-42659

Ship To:

M & L AG, LLC.
601 W MAIN
ALMA, NE 68920

Please Remit To:

UNITED SUPPLIERS, INC.
P.O. BOX 802716
KANSAS CITY, MO 64180-2716.

Due Date:        6/15/2015

DOLLARS ARE IN (USD) ON THIS INVOICE.

| TERMS | SALESMAN | SHIP VIA | SHIP DATE | RELEASE# | BOL | CUSTOMER # |
|---|---|---|---|---|---|---|
| SEE BELOW | SHIRLEY | | 8/31/2014 | | IPP REBILL | 1312005 |

| ITEM | LOC | DESCRIPTION | UNITS | SIZE | QUANTITY | PRICE(USD) | AMOUNT(USD) |
|---|---|---|---|---|---|---|---|
| 41L51150 | 99 | LEXAR EZ (BULK) | 400.00 | BULK | 400.00 | $52.8800 | $21152.00 |

PRICED PER GAL
LINE NOTES:
IPP REBILL

| PRICE | IF PAID BY | PAY | DISCOUNTED |
|---|---|---|---|
| $51.2900 | 12/20/2014 | $20,516.00 | $636.00 |
| $51.5600 | 01/15/2015 | $20,624.00 | $528.00 |
| $51.8200 | 02/15/2015 | $20,728.00 | $424.00 |
| $52.0900 | 03/15/2015 | $20,836.00 | $316.00 |
| $52.3500 | 04/15/2015 | $20,940.00 | $212.00 |
| $52.6200 | 05/15/2015 | $21,048.00 | $104.00 |

| | |
|---|---|
| Subtotal(USD) | $21,152.00 |
| Tax(USD) | $0.00 |
| Total(USD) | $21,152.00 |

TERMS: A 1.5% PER MONTH LATE PAYMENT PENALTY WILL BE ASSESSED AFTER DUE DATE

*Balance due - $898.26*

Page  1



# UNITED SUPPLIERS, INC

30473 260th St
P. O. Box 538
Eldora, Iowa 50627
(641) 858-2341

Bill To:        1312005

M & L AG, LLC.
% CRAIG MEHLING
ROUTE 1 BOX 1067
HARDIN, MT 59034

Invoice Number:  C40269687
Invoice Date:  8/31/2014
Ticket No:  DS-42668

Ship To:

M & L AG, LLC.
601 W MAIN
ALMA, NE 68920

Please Remit To:

UNITED SUPPLIERS, INC.
P.O. BOX 802716
KANSAS CITY, MO 64180-2716.

Due Date:        6/15/2015

DOLLARS ARE IN (USD) ON THIS INVOICE.

| TERMS | SALESMAN | SHIP VIA | SHIP DATE | RELEASE# | BOL | CUSTOMER # |
|---|---|---|---|---|---|---|
| SEE BELOW | SHIRLEY | | 8/31/2014 | | IPP REBILL | 1312005 |

| ITEM | LOC | DESCRIPTION | UNITS | SIZE | QUANTITY | PRICE(USD) | AMOUNT(USD) |
|---|---|---|---|---|---|---|---|
| 41H00200 | 99 | HALEX GT (BULK) | 785.00 | BULK | 785.00 | $47.8600 | $37570.10 |
| | | PRICED PER GAL | | | | | |
| | | LINE NOTES: | | | | | |
| | | IPP REBILL | | | | | |

| | |
|---|---|
| Subtotal(USD) | $37,570.10 |
| Tax(USD) | $0.00 |
| Total(USD) | $37,570.10 |

TERMS: A 1.5% PER MONTH LATE PAYMENT PENALTY WILL BE ASSESSED AFTER DUE DATE

Balance due- $29,577.48

Page 1



# UNITED SUPPLIERS, INC

30473 260th St
P. O. Box 538
Eldora, Iowa 50627
(641) 858-2341

Bill To:          1312005

M & L AG, LLC.
% CRAIG MEHLING
ROUTE 1 BOX 1067
HARDIN, MT 59034

Invoice Number:  C40269688
Invoice Date:  8/31/2014
Ticket No:  DS-42669

Ship To:

M & L AG, LLC.
601 W MAIN
ALMA, NE 68920

Please Remit To:

UNITED SUPPLIERS, INC.
P.O. BOX 802716
KANSAS CITY, MO 64180-2716.

Due Date:          6/15/2015

DOLLARS ARE IN (USD) ON THIS INVOICE.

| TERMS | SALESMAN | SHIP VIA | SHIP DATE | RELEASE# | BOL | CUSTOMER # |
|---|---|---|---|---|---|---|
| SEE BELOW | SHIRLEY | | 8/31/2014 | | IPP REBILL | 1312005 |

| ITEM | LOC | DESCRIPTION | UNITS | SIZE | QUANTITY | PRICE(USD) | AMOUNT(USD) |
|---|---|---|---|---|---|---|---|
| 41L90775 | 99 | LUMAX EZ (BULK) | 1,565.00 | BULK | 1,565.00 | $63.3400 | $99127.10 |

PRICED PER GAL
LINE NOTES:
IPP REBILL

| PRICE | IF PAID BY | PAY | DISCOUNTED |
|---|---|---|---|
| $61.4400 | 12/20/2014 | $96,153.60 | $2,973.50 |
| $61.7600 | 01/15/2015 | $96,654.40 | $2,472.70 |
| $62.0700 | 02/15/2015 | $97,139.55 | $1,987.55 |
| $62.3900 | 03/15/2015 | $97,640.35 | $1,486.75 |
| $62.7100 | 04/15/2015 | $98,141.15 | $985.95 |
| $63.0200 | 05/15/2015 | $98,626.30 | $500.80 |

Subtotal(USD)          $99,127.10

Tax(USD)          $0.00

TERMS: A 1.5% PER MONTH LATE PAYMENT PENALTY WILL BE ASSESSED AFTER DUE DATE

Total(USD)          $99,127.10

Page  1



# UNITED SUPPLIERS, INC

30473 260th St
P. O. Box 538
Eldora, Iowa 50627
(641) 858-2341

Bill To:          1312005

M & L AG, LLC.
% CRAIG MEHLING
ROUTE 1 BOX 1067
HARDIN, MT 59034

Invoice Number:  C40269690
Invoice Date:  8/31/2014
Ticket No:  DS-42671

Ship To:

M & L AG, LLC.
601 W MAIN
ALMA, NE 68920

Please Remit To:

UNITED SUPPLIERS, INC.
P.O. BOX 802716
KANSAS CITY, MO 64180-2716.

Due Date:          6/15/2015

DOLLARS ARE IN (USD) ON THIS INVOICE.

| TERMS | SALESMAN | SHIP VIA | SHIP DATE | RELEASE# | BOL | CUSTOMER # |
|---|---|---|---|---|---|---|
| SEE BELOW | SHIRLEY | | 8/31/2014 | | IPP REBILL | 1312005 |

| ITEM | LOC | DESCRIPTION | UNITS | SIZE | QUANTITY | PRICE(USD) | AMOUNT(USD) |
|---|---|---|---|---|---|---|---|
| 41B613B1 | 99 | BICEP II MAGNUM FC (BULK) | 2,200.00 | BULK | 2,200.00 | $39.6800 | $87296.00 |

PRICED PER GAL
LINE NOTES:
IPP REBILL

| PRICE | IF PAID BY | PAY | DISCOUNTED |
|---|---|---|---|
| $38.4900 | 12/20/2014 | $84,678.00 | $2,618.00 |
| $38.6900 | 01/15/2015 | $85,118.00 | $2,178.00 |
| $38.8900 | 02/15/2015 | $85,558.00 | $1,738.00 |
| $39.0800 | 03/15/2015 | $85,976.00 | $1,320.00 |
| $39.2800 | 04/15/2015 | $86,416.00 | $880.00 |
| $39.4800 | 05/15/2015 | $86,856.00 | $440.00 |

Subtotal(USD)          $87,296.00
Tax(USD)          $0.00

TERMS: A 1.5% PER MONTH LATE PAYMENT PENALTY WILL BE ASSESSED AFTER DUE DATE

Total(USD)          $87,296.00

Balance due- $55,948.80

Page  1



# UNITED SUPPLIERS, INC

30473 260th St
P. O. Box 538
Eldora, Iowa 50627
(641) 858-2341

| Bill To: | 1312005 | | Invoice Number: | C40278892 |
|---|---|---|---|---|
| | | | Invoice Date: | 10/8/2014 |
| | | | Ticket No: | DS-44465 |

M & L AG, LLC.
% CRAIG MEHLING
ROUTE 1 BOX 1067
HARDIN, MT 59034

Ship To:

M & L AG, LLC.
PO BOX 11
HOLSTEIN, NE 68950

Please Remit To:

UNITED SUPPLIERS, INC.
P.O. BOX 802716
KANSAS CITY, MO 64180-2716.

Due Date:      6/15/2015

DOLLARS ARE IN (USD) ON THIS INVOICE.

| TERMS | SALESMAN | SHIP VIA | SHIP DATE | RELEASE# | BOL | CUSTOMER # |
|---|---|---|---|---|---|---|
| SEE BELOW | SHIRLEY | | 10/8/2014 | | 0012964513 | 1312005 |

| ITEM | LOC | DESCRIPTION | UNITS | SIZE | QUANTITY | PRICE(USD) | AMOUNT(USD) |
|---|---|---|---|---|---|---|---|
| 41L90775 | 99 | LUMAX EZ (BULK) | 3,002.00 | BULK | 3,002.00 | $63.3400 | $190146.68 |

PRICED PER GAL

| PRICE | IF PAID BY PAY | DISCOUNTED |
|---|---|---|
| $61.4400 | 12/20/14 $184,442.88 | $5,703.80 |
| $61.7600 | 1/15/15 $185,403.52 | $4,743.16 |
| $62.0700 | 2/15/15 $186,334.14 | $3,812.54 |
| $62.3900 | 3/15/15 $187,294.78 | $2,851.90 |
| $62.7100 | 4/15/15 $188,255.42 | $1,891.26 |
| $63.0200 | 5/15/15 $189,186.04 | $960.64 |

| | |
|---|---|
| Subtotal(USD) | $190,146.68 |
| Tax(USD) | $0.00 |
| Total(USD) | $190,146.68 |

TERMS: A 1.5% PER MONTH LATE PAYMENT PENALTY WILL BE ASSESSED AFTER DUE DATE

Balance due - $27,552.90

Page 1



# UNITED SUPPLIERS, INC

30473 260th St
P. O. Box 538
Eldora, Iowa 50627
(641) 858-2341

Bill To:        1312005

M & L AG, LLC.
% CRAIG MEHLING
ROUTE 1 BOX 1067
HARDIN, MT 59034

Invoice Number:  C40284839
Invoice Date:  12/4/2014
Ticket No:  KN-70798

Ship To:

M & L AG, LLC.
19145 SOUTH WINCHESTER AVE
PO BOX 11
HOLSTEIN, NE 68950

Please Remit To:

UNITED SUPPLIERS, INC.
P.O. BOX 802716
KANSAS CITY, MO 64180-2716.

Due Date:        6/15/2015

DOLLARS ARE IN (USD) ON THIS INVOICE.

| TERMS | SALESMAN | SHIP VIA | SHIP DATE | RELEASE# | SCL | CUSTOMER # |
|---|---|---|---|---|---|---|
| SEE BELOW | SHIRLEY | | 12/1/2014 | | IP CR/RB | 1312005 |

| ITEM | LOC | DESCRIPTION | UNITS | SIZE | QUANTITY | PRICE(USD) | AMOUNT(USD) |
|---|---|---|---|---|---|---|---|
| 41S36305 | 17 | STATUS (4X125 OZ.) | 17.00 | CASE | 8,500.00 | $3.3800 | $28730.00 |
| | | PRICED PER OZ | | | | | |

|  |  |
|---|---|
| Subtotal(USD) | $28,730.00 |
| Tax(USD) | $0.00 |
| Total(USD) | $28,730.00 |

TERMS: A 1.5% PER MONTH LATE PAYMENT PENALTY WILL BE ASSESSED AFTER DUE DATE

**LATE CHARGE SUMMARY**

| A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|
| Invoice No. | Invoice Date | Due Date | Balance | Daily Charge (D x .18/365) | Days to 08/01/17 | Late Charge (E x F) |
| C40164952 | 03/14/14 | 09/15/14 | $50,435.06 | $24.87 | 1051 | $26,140.56 |
| C40269678 | 08/31/14 | 06/15/15 | $898.26 | $0.44 | 778 | $344.64 |
| C40269687 | 08/31/14 | 06/15/15 | $29,577.48 | $14.59 | 778 | $11,348.03 |
| C40269688 | 08/31/14 | 06/15/15 | $99,127.10 | $48.88 | 778 | $38,032.22 |
| C40269690 | 08/31/14 | 06/15/15 | $55,948.80 | $27.59 | 778 | $21,465.95 |
| C40278892 | 10/08/14 | 06/15/15 | $27,552.90 | $13.59 | 778 | $10,571.26 |
| C40284839 | 12/04/14 | 06/15/15 | $28,730.00 | $14.17 | 778 | $11,022.87 |
| **TOTAL** | | | **$292,269.60** | **$144.13** | | **$118,925.52** |

**EXHIBIT**

**G**